USDC SCAN INDEX SHEET

















ANDY   1/24/00   9:55

3:99-CV-00659   KANG V. U LIM AMERICA INC

*12*

*P/A.*

ORIGINAL

00 JAN 21 PM 3: 43

DEPUTY

1  JOHN S. BATTENFELD (SBN 119513)
   MELISSA M. MULKEY (SBN 186775)
2  MORGAN, LEWIS & BOCKIUS LLP
   Twenty-Second Floor
3  300 South Grand Avenue
   Los Angeles, California 90071-3132
4  Telephone: (213) 612-2500
   Facsimile: (213) 612-2554
5

6  Attorneys for Defendants
   U. LIM AMERICA INC. and
7  TAE JIN YOON

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  SOO CHEOL KANG, ) | Case No. 99cv659JM (RBB) |
| 13                Plaintiff, ) | **MEMORANDUM OF POINTS AND** |
| | **AUTHORITIES IN SUPPORT OF** |
| 14      v.                    ) | **DEFENDANTS' MOTION FOR** |
| | **SUMMARY JUDGMENT, AND, IN THE** |
| 15  U. LIM AMERICA, INC. TAE JIN YOON, ) | **ALTERNATIVE, FOR SUMMARY** |
| an individual and DOES 1 through 100 ) | **ADJUDICATION OF CLAIMS** |
| 16                            ) | |
| 17           Defendants.       ) | DATE: Tuesday, February 22, 2000 |
| | TIME: 10:30 a.m. |
| | COURTROOM: 6 |
| 18                            ) | |
| 19                            ) | DISCOVERY CUT-OFF: January 17, 2000 |
| | MOTION HEARING CUT-OFF: February 21, 2000* |
| | PRE-TRIAL CONFERENCE: March 17, 2000 |
| 20                            ) | TRIAL: April 11, 2000 |
| 21 _____) | Before the Honorable: Jeffery T. Miller |

22  / / / /

23  / / / /

24  / / / /

25  / / / /

26  / / / /

27  *      Due to the court holiday on Monday, February 21, 2000, the Court has confirmed that the
28         February 22, 2000 hearing date is timely.

1-LA/500771.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................. 1

II. STATEMENT OF FACTS ...................................................... 2
    A.    Background ............................................................. 2
    B.    Kang's Employment ................................................... 3
    C.    Terms of Employment ................................................. 3
    D.    The Alleged Harassment .............................................. 4
    E.    The Termination of Kang's Employment With U. Lim .................. 6

II. ARGUMENT ................................................................. 7
    A.    Standard for Summary Judgment ....................................... 7
    B.    Kang's Breach of Contract Claims Fails As A Matter of Law ........... 8
        1.    Kang Was An At-Will Employee. .................................. 8
        2.    U. Lim Terminated Kang's Employment For Cause. ................ 11
    C.    Kang's Breach of the Covenant of Good Faith And Fair Dealing
        Claim Fails As A Matter of Law ..................................... 13
    D.    Plaintiff's Claim for Wrongful Termination in Violation of Public
        Policy is Barred by the One Year Statute of Limitations ............... 13
    E.    The Court Should Grant Summary Judgment in Favor of Defendants on
        Plaintiff's Title VII Claim Because Defendants Are Not Covered By the Act .... 14
        1.    U. Lim Never Employed Fifteen Employees At Any Time
            During  Kang's Employment ...................................... 14
        2.    Yoon Cannot Be Held Individually Liable Under Title VII. ............ 15
    F.    The Court Should Grant Summary Judgment on Plaintiff's FEHA
        Claim Because the FEHA does not Provide Relief for Acts of Discrimination
        Occurring Outside The United States ................................. 15
    G.    Assuming *Arguendo* That Title VII or The FEHA Applies, The Court
        Should Grant Summary Judgment in Favor of Defendants Because Kang
        Cannot Show That He Was Discriminated Against on the Basis of His
        National Origin ..................................................... 17
        1.    The Standard for Deciding a Discrimination Case. ................... 17
        2.    Kang Cannot Establish a *Prima Facie* Case of Discriminatory
            Discharge. ..................................................... 18
        3.    U. Lim Had a Legitimate, Non-Discriminatory Reason for
            Terminating Kang's Employment and Kang Has Adduced
            No Evidence That This Reason Was a Pretext for National Origin
            Discrimination ................................................. 19
        4.    Yoon Cannot Be Held Individually Liable for The Alleged
            Discriminatory Termination ...................................... 21
        5.    Kang's Hostile Work Environment Claim Fails As A Matter of Law ..... 21
            a.    Kang's claim is barred by the statute of limitations ............ 21
            b.    Kang cannot demonstrate that he was subject to a hostile work
               environment because of his national origin ................... 23

IV.    CONCLUSION ........................................................ 25

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES:**

**Federal**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 106 S. Ct. 2505 91 L. Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Bolden v. PRC, Inc.,
    43 F.3d 545 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Breitman v. May Co. of California,
    37 F.3d 562 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Casillas v. United States Navy,
    735 F.2d 338 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Celotex Corp. v. Catrett,
    477 U.S. 317 106 S. Ct. 2548 91 L. Ed. 2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Crawford v. Medina General Hosp.,
    96 F. 3d 830 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cross v. State of Alabama,
    49 F.3d 1490 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Delaware State College v. Ricks,
    449 U.S. 250 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Denty v. Smithkline Beecham Corp,
    907 F. Supp. 879 (E.D. Pa.),
    aff'd 109 F.3d 147 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Douglas v. Anderson,
    656 F.2d 528 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Draper v. Couer Rochester, Inc.,
    147 F.3d 1104 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

EEOC v. AIC Security Investigations, Ltd.,
    55 F.3d 1276 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

EEOC v. Arabian American Oil Co.,
    499 U.S. 244 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ezold v. Wolf, Block, Schorr & Solis-Cohen,
    983 F.2d 509 (3d Cir. 1992),
    cert. denied, 114 S. Ct. 88 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Funk v. Sperry Corp.,
    842 F.2d 1129 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gary v. Long,
    59 F. 3d 1391 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Goodluck v. Kelly Tractor Co.,
    733 F. Supp. 1479 (S.D. Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Grant v. Lone Star Co.,
    21 F.3d 649 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Greenlees v. Eidenmuller Enterprises, Inc.,
    32 F.3d 197 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hardin v. S.C. Johson & Son, Inc.,
    167 F.3d 340 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Hinton v. Pacific Enterprises,
    5 F.3d 391 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hoy v. Sears Roebuck & Co.,
    861 F. Supp. 881 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Meritor Savings Bank v. Vinson,
    477 U.S. 57 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Miller v. Maxwell's International, Inc.,
    991 F. 2d 583 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 15

Pejic v. Hughes Helicopters, Inc.,
    840 F.2d 667 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Schuler v. Chronicle Broadcasting Co.,
    793 F.2d 1010 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sharpe v. AT&T,
    66 F.3d 1045 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

St. Mary's Honor Center v. Hicks,
    509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Tarin v. County of Los Angeles,
    123 F.3d 1259 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Texas Dep't. of Community Affairs v. Burdine,
    450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 17

Tomka v. Seiler Corp.,
    66 F. 3d 1295 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United Air Lines, Inc. v. Evans,
    431 U.S. 553 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wallis v. J.R. Simplot Co.,
    26 F.3d 885 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 19, 20

Young v. Will County,
    882 F.2d 290 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**State**

Barton v. New United Motor Mfg., Inc.,
    43 Cal. App. 4th 1200 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Camp v. Jeffer, Mangels, Butler & Marmaro,
    35 Cal. App. 4th 620 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Crosier v. United Parcel Service, Inc.,
    150 Cal. App. 3d 1132 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Davis v. Consolidated Freightways,
    29 Cal. App. 4th 354 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Diamond Multimedia Systems v. Superior Court,
    19 Cal. 4th 1036 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Fisher v. San Pedro Peninsula Hospital,
    214 Cal. App. 3d 590 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

Foley v. Interactive Data Corp.,
    47 Cal. 3d 654 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10, 13

General Dynamics Corp. v. Superior Court,
    7 Cal. 4th 1164 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gould v. Maryland Sound Indus., Inc.,
    31 Cal. App. 4th 1137 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hentzel v. Singer Co.,
    138 Cal. App. 3d 290 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Horn v. Cushman & Wakefield Western, Inc.,
    72 Cal. App. 4th 798 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Janken v. GM Hughes Electronics,
    46 Cal. App. 4th 55 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 21

Kovatch v. California Casualty Management Co.,
    65 Cal. App. 4th 1256 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Miller v. Pepsi Cola,
    210 Cal. App. 3d at 1559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Miller v. Pepsi-Cola Bottling Co.,
    210 Cal. App. 3d 1554 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Muller v. Automobile Club of S. Cal.,
    61 Cal. App. 4th 431 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

North Alaska Salmon Co. v. Pillsbury,
    174 Cal. 1 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 16

Pugh v. See's Candies, Inc.,
    116 Cal. App. 3d 311 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

R.J. Cardinal Co. v. Ritchie,
    218 Cal. App. 2d 124 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Regents of Univ. of Cal. v. Superior Court,
    33 Cal. App. 4th 1710 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Reno v. Baird,
    18 Cal. 4th 640 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-21

Scott v. Pacific Gas & Electric Co.,
    11 Cal. 4th 454 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 10, 11

Stokes v. Dole Nut Co.,
    41 Cal. App. 4th 285 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tollefson v. Roman Catholic Bishop,
    219 Cal. App. 3d 843 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

University of S. Cal. v. Superior Court,
    222 Cal. App. 3d 1028 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Unreported**

Ahmed v. Berkshire Medical Center, Inc.,
    1998 WL 157016 (D. Mass. March 31, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 25

DFEH v. California State Univ., Hayward,
    FEHC Dec. No. 88-18 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Pacanza v. Shell Oil Company,
    1997 WL 227980 (N.D. Cal. March 19, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 24

Starr v. Legal Aid Society of the City of New York,
    1998 WL 477733 (S.D.N.Y. Aug. 14, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1   **STATUTES:**

2   42 U.S.C. 2000e(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3   42 U.S.C. 2000e-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4   42 U.S.C. § 2000e et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5   California Code of Civil Procedure ("CCP") § 340(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6   California Fair Employment and Housing Act ("FEHA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7   F.R.C.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8   Gov. Code § 12960 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

9   Section 2922 of the California Labor Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10   Title VII of the Civil Rights Act of 1964 ("Title VII") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. **INTRODUCTION**

1

2    On February 16, 1999, Plaintiff Soo Cheol Kang ("Kang") filed the instant action against his

3    former employer Defendant U. Lim America Inc. ("U. Lim"), and U. Lim's Vice President,

4    Defendant Tae Jin Yoon ("Yoon") (collectively "Defendants").  This action arises out of U. Lim's

5    employment of Kang as a manufacturing facility in Tijuana, Mexico and alleged termination of

6    Kang's employment after Kang refused to work the hours required of him as a management

7    employee.[1/]  In his Complaint, Kang alleges five causes of action: wrongful termination in breach of

8    contract (First Cause of Action); breach of the covenant of good faith and fair dealing (Second

9    Cause of Action); wrongful termination in violation of public policy (Third Cause of Action); and

10   discrimination on the basis of his National Origin, Korean, in violation of the California Fair

11   Employment and Housing Act ("FEHA") (Fourth Cause of Action) and Title VII of the Civil Rights

12   Act of 1964 ("Title VII") (Fifth Cause of Action).

13   Contrary to the assertions contained in Kang's Complaint, the record evidence from Kang's

14   own deposition shows that Kang did not have a written, oral or implied contract of employment

15   with U. Lim, and that U. Lim terminated Kang's employment for good cause.  To the extent Kang

16   seeks to assert a common law tort claim that his termination contravened public policy, such a claim

17   is barred by the one year statute of limitations, and must be dismissed.  As to Kang's FEHA and

18   Title VII claims, Kang's employment was not covered by either statute, and thus, these claims must

19   be dismissed.

20   Even assuming, *arguendo* that Title VII and/or the FEHA apply,  Kang's allegations that his

21   termination was discriminatory fail by Kang's own admission that Yoon terminated his employment

22   solely because of his refusal to work the long hours required of U. Lim management employees.

23   Finally, as to Kang's claim that he suffered a hostile work environment because of his national

24   origin, this claim is barred by the relevant statute of limitations under the FEHA and Title VII.

25   Further, the record is completely devoid of any facts to support such a claim.  Indeed, Yoon — the

26

27   [1/]   As noted in Defendants' Statement of Facts, Kang testified that he believed Yoon fired him
            when Yoon told him to quit if he did like the working hours.  Thereafter Kang stopped
28          coming to work.  Although Defendants contend Kang quit, for purposes of this Motion only,
            Defendants will assume that Kang believed he had been fired.

1   alleged perpetrator of the abuse — is Korean, as are all of the other past and present employees of

2   U. Lim America.  If all of Kang's allegations are believed, he certainly paints an unpleasant picture

3   of a work environment in which he and selected other employees were abused verbally and

4   physically and worked long hours.  However, that does not change the undeniable fact that the

5   alleged conduct, by Kang's own admission, was not directed at him because of his national origin,

6   but was due to Yoon's temper, his warped view of "training," and/or Yoon's favoritism towards

7   certain other Korean employees.  Kang admits that none of this alleged abuse was accompanied by

8   derogatory comments about Koreans, and that all of the incidents he complained of were the result

9   of work-related altercations.  Most importantly, the conditions which led to his alleged termination,

10  the long work hours, were directly related to the need to fill orders of a new client.  Nonetheless,

11  Kang simply stopped working the hours that his fellow managers were working.  When Yoon

12  confronted Kang, Kang stated that he would not work the required hours, and was told by Yoon that

13  he could leave — which he did.

## II. STATEMENT OF FACTS[2]

**A.**   **Background**

16  U. Lim is a corporation organized under California law, and is owned by Ki Hwa Yoon.

17  (Defs.' St. of Uncont. Facts[3], No. 1).  Ki Hwa Yoon is also Chairman of U. Lim Electronics Co.,

18  Ltd. ("ULEC"), a corporation organized under the laws of the Republic of Korea.  (No. 2).

19  Although U. Lim America is a California corporation, with an office in San Diego, throughout the

20  duration of Kang's employment all of U. Lim's employees worked at a manufacturing facility

21  located in Tijuana, Mexico.  (No. 3).  This same facility also had a number of workers who resided

22  in Mexico.  (No. 4).  These workers were employed by a subcontractor of U. Lim, U. Lim de

23  Mexico.  U. Lim de Mexico is a separate business entity operating under Mexican law.  (Nos. 3-5).

24  During Kang's employment, U. Lim never employed more than five (5) employees at any

25

---

26  [2]   The relevant facts are more fully set forth in U. Lim's Statement of Uncontroverted Facts
       filed and served herewith.  The facts alleged by Kang in his deposition are accepted as true
27     only for purposes of this Motion.

28  [3]   Hereinafter, Defendants' Statement of Uncontroverted Facts will be referred to solely by
       paragraph number; i.e. "No. _."

1   one time. (No. 7). Specifically, during Kang's employment, U. Lim employed the following

2   individuals: Yoon, Vice President , employed from 1/1/93 to the present; Jae Ho Cho, General

3   Manager, employed from 3/15/93 to the present; Soon Wan Park, Asst. General Manager, employed

4   from 1/1/94 to the present; Suk Ho Ko, Production Manager, employed from 1/1/93 to 4/15/95;

5   Teddy Baek - no title - employed from 11/11/95 to 1/31/96; and Kang, Purchasing and Material

6   Manager, employed from 4/15/94 to 2/2/98. (No. 6).[4] All of these current or former employees are

7   of Korean national origin. (No. 7).

8   **B.    Kang's Employment**

9        Sometime in March or April of 1994, Kang learned of an opportunity to go to work for U.

10  Lim. (No. 9). Kang interviewed with Yoon for the position. (No. 10). During this first meeting,

11  Kang accepted U. Lim's offer of employment. (No. 11). Kang was informed that he would be

12  working for U. Lim in Tijuana. (No. ). Prior to commencing his employment, Kang met with Yoon

13  at the Tijuana facility and was informed that his job duties would consist primarily of purchasing,

14  and that the working hours were generally 7:30 a.m. to 5:30 p.m. Monday through Friday, with

15  additional time required on Saturdays. (Nos. 14-16). On April 15, 1994, Kang began his

16  employment with U. Lim at the Tijuana facility. (No. 17).

17       For the first month of his employment, Kang generally left U. Lim at approximately

18  5:30-6:00 p.m., every evening. (No. 20). At some point after his first month, Yoon gradually began

19  asking Kang to stay longer than 5:30-6:00 p.m. (No. 21). By the end of his first year of

20  employment, Kang estimated that he would sometimes work as late as one or two o'clock in the

21  morning, and sometimes he would have to stay overnight. (No. 26).

22  **C.    Terms of Employment**

23       Kang did not receive any written materials concerning the terms of his employment. (No.

24  36). Although Kang claims that Yoon made statements to him concerning the future, and that if he

25  moved up in the company he would take Kang with him to Korea, Yoon never told him he would

26

27  [4]   Kang also claims that Bo Won Cheong, who started working at the Tijuana facility in
      September 1997, was an employee of U. Lim during the end of Kang's employment. (No.

28    6). For purposes of this Motion only, Defendants will assume that Cheong was also an
      employee of U. Lim from September 1997 through February 2, 1998.

1   have lifetime employment, or used any words to that effect. (No. 40). Kang claims that early in his

2   employment, Yoon told Kang that he considered him a good employee and that he was the kind of

3   employee that he would not fire even if he made a mistake. (No. 41). However, as time went by,

4   Yoon began commenting that he would fire anyone who did not work hard enough or did not follow

5   orders. (No. 35). Thus, by the middle of his employment, Kang no longer felt he would not be fired

6   by Yoon, and in fact feared that Yoon might fire him at any time for any reason. (Nos. 44-45).

7   Kang did not speak with anyone else in management concerning the duration of his employment or

8   the reasons he could be terminated. (Nos. 42-43).

9   **D.      The Alleged Harassment**

10          Kang claims that throughout his employment, Yoon subjected him and certain other

11   employees to physical and verbal abuse. Specifically, Kang claims that Yoon occasionally called

12   him the Korean equivalent of the words "stupid" or "cripple."[5] (No. 47). Kang claims that he also

13   observed Yoon calling Park, another employee, a "son of a bitch" (direct Korean translation is "son

14   of dog"), and other bad Korean words, including "son of vagina." (No. 49). Yoon did not express

15   the same level of abuse towards all of the Korean employees. (No. 50). According to Kang, Yoon

16   yelled at Park the most, then Kang, and yelled much less at Ko and Cho. (Id.). Kang believed Yoon

17   yelled at Ko less than he yelled at Kang and Park because Ko was a new employee. (No. 51). Kang

18   believed Yoon yelled at Kang and Park much more than Cho because of the type of work Kang and

19   Park were performing, which involved more duties than Cho had. (No. 52). Kang also believes that

20   Yoon treated him and Park more harshly in an effort to make them better employees for the future.

21   (No. 53). By Kang's own admission, Yoon yelled because he was angry at everyone and gradually

22   became more and more angry over work issues. (No. 48). Yoon also yelled at the Mexican workers

23   of U. Lim de Mexico when things would not go as he had expected. (No. 55-56).

24          As for the alleged physical abuse, Kang claims that on one or two occasions after the first

25   year of his employment, Yoon "nudged" Kang with his fist, by punching him on the shoulder or

26   chest area. (No. 57). Kang indicated that Yoon may have been trying to get his attention, and that

27

28   [5]   Kang stated that "cripple" was not meant to refer to disability, it was intended to mean that
         Kang acted like a "retarded" person, and was another way of calling him stupid. (No. 47).

the "nudge" did not hurt. (No. 58). Kang also claims that approximately five or six times, when Yoon was angry about a late shipment or some other work-related issue, he kicked Kang in the shin area. (Nos. 59-60). Kang never complained to Yoon or anyone else in management at U. Lim about Yoon kicking him. (No. 61).

Kang also alleges that approximately 20 times during his employment Yoon "dragged" him by the ear. (No. 62). At first, Kang believed the ear dragging was just friendly joking, but even after it started to bother him he did not complain to anyone at U. Lim. (No. 64-65). Kang also claims that numerous times items were thrown at him and at least two times he was hit by objects thrown at him by Yoon, in 1996 or 1997. (No. 67). Both incidents were times when Yoon, angry about some work-related issue, threw a file at Kang, hitting him once on the hand and once on the arm. (No. 71). Kang asserts that he did not complain about these incidents because Yoon repeatedly made statements to the effect that throwing things and yelling was part of his training, that he would have to endure these things to become a good employee. (No. 72). Kang also claims that Yoon also hit him with a ruler and a file on a number of occasions. (No. 74). Again, Kang claims that he did not complain about being hit with the ruler because of comments Yoon allegedly made about this kind of "punishment" being part of Kang's training. (No. 76). Finally, Yoon directed Kang to do jumping jacks on approximately four occasions; instructing him to "grab [his] ears and do jumping jacks." (No. 82).

Kang also claims that he saw Yoon throw items at Park and Cho. (No. 79). Kang claims that he also witnessed Yoon punch Park in the nose when Yoon and Park were arguing concerning a production-related matter. (No. 84). Kang claims that Yoon also hit Park with a ruler on many occasions. (No. 85). Kang does not recall Yoon kicking any other employees of Korean national origin, hitting such employees with his fist or a ruler, dragging such employees by the ear, or making such employees do jumping jacks. (Nos. 85-86).

Kang indicated that Yoon would throw things at him "when things go wrong . . . or not the way he expected." (No. 81). As noted above, Kang also indicated that Yoon would engage in the complained of conduct because it was part of Yoon's effort to train Kang. (Nos. 72-76). Further, Kang indicated that Yoon treated other Korean employees more favorably than Kang and Park

1   because Kang and Park had more responsibility. (Nos. 52-53).

2        Kang does not believe that Yoon engaged in any of the alleged physical abuse in 1998.

3   (Nos. 104-107). Kang could not recall any times when Yoon hit him with a ruler, kicked him,

4   grabbed him by the ears or made him do jumping jacks from October 1997 through the time of his

5   termination in February 1998. (Id.). Kang does not recall Yoon making any negative comments

6   about Koreans. (No. 100). Kang claims that Yoon did make statements about Americans and

7   Mexicans being lazy, and that Koreans worked harder. (No. 101-3).

8   **E.      The Termination of Kang's Employment With U. Lim**

9        From September 1996 through February 1997, Kang worked temporarily for ULEC in

10  Incheon, Korea. (No. 110). Kang admits that he was not subjected to any abuse or long hours

11  during this time period. (No. 114). Shortly after Kang arrived in Korea, he met his future wife.

12  (No. 111). Although Kang and his wife wed five days before he left Korea, she did not come to the

13  United States until June 25, 1997. (Nos. 112-113).

14       Kang claims that upon his return from Korea he typically arrived at work between 7 and

15  7:30 a.m., and left anywhere between 6 p.m. and 2 a.m. (Nos. 115-116). He also claims that he

16  worked approximately twenty five Saturdays and ten Sundays over his last year, typically arriving

17  between 7 and 7:30 a.m. and leaving between 4 and 4:30 p.m. (No. 117). Kang also believes that

18  there were at least five occasions during his last year of employment where he would work all night,

19  not leaving the facility. (No. 118). Kang noted that these all night stays were a result of urgent

20  orders from a new customer, L.G. Electronics. (No. 119). Specifically, L.G. Electronics had placed

21  large orders for grounding wire which Yoon had promised on a short deadline. (No. 121). Thus,

22  Yoon told the employees to do whatever it took to make the delivery. (Id.). In order to meet the

23  demands of L.G. Electronics, Kang and other employees often had drive to L.G.'s facility in

24  Mexicali to deliver orders because U. Lim was short on inventory, and had to deliver product as it

25  was manufactured. (No. 122).

26       In November or December 1997, Kang learned that his wife was pregnant. (No. 125). At

27  this time, the urgent orders for L.G. Electronics were still ongoing. (No. 133). Toward the end of

28  1997, Kang approached Jae Ho Cho concerning his work hours, informing him that he needed to

1  spend more time at home. (No. 126-127). Kang also recalls discussing the Saturday work with

2  Cho. Specifically, Kang suggested that it was not necessary for him to be there on Saturday, and

3  that a Mexican supervisor could handle things. (No. 128). Cho informed Kang that it was Kang's

4  responsibility as the manager in charge of the warehouse to be there at that time. (No. 129). In

5  December 1997, Kang began leaving work at approximately 6:30 p.m. Monday through Friday, and

6  did not come in to work on Saturday or Sunday. (No. 131). Kang did not discuss this action with

7  anyone, he simply made the decision by himself. (No. 132). Because the long hours necessitated

8  by the L.G. Electronics orders were still in effect, when Kang would leave at night, Cho, Park and

9  Cheong would still be working. (No. 135).

10     On February 2, 1998, Yoon (who was in Korea at the time) called Kang concerning his work

11  hours. (No. 136). Yoon told Kang he knew that Kang had not been working overtime or weekends,

12  and asked Kang if he was going to continue not to do so. (Id.). Kang told Yoon that he did not feel

13  that it was necessary for him to be there and that he could no longer tolerate these long hours

14  because he needed to spend more time with his wife. (No. 137). Yoon informed Kang that he could

15  not allow him to not work the required hours, and he would have to let him go. (Nos. 138; 140).

16  Kang did not offer to increase his hours because he felt he had to "stand up" to Yoon. (No. 139).

17  Accordingly, Yoon terminated Kang's employment due to his refusal to work the required hours.

18  (No. 140).[6/]

19                                    **II. ARGUMENT**

20  A.     **Standard for Summary Judgment.**

21     Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

22  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

23  material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c).

24  The moving party bears the initial burden of demonstrating the absence of a genuine issue of

25  material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the moving party

26  has no burden to negate or disprove matters on which the non-moving party will have the burden of

27

28  [6/]     Defendants contend that Kang quit his employment. Indeed, at one point in his deposition,
           Kang testified that Yoon told him he could quit, not that he was fired. (No. 138).

1   proof at trial.  The moving party need only point out to the court that there is an absence of evidence

2   to support the non-moving party's case.  Celotex, 477 U.S. at 325.  The burden then shifts to the

3   non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at

4   324, 106 S. Ct. at 2553.  To carry this burden, the non-moving party must "do more than simply

5   show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industrial

6   Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence

7   . . . will be insufficient.  There must be evidence on which the jury can reasonably find for the [non-

8   moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Evidence that "is merely

9   colorable or is not significantly probative," is not sufficient to avoid summary judgment.  Id. at 249-

10   250.

11   **B.     Kang's Breach of Contract Claims Fails As A Matter of Law.**

12          1.     Kang Was An At-Will Employee.

13          Section 2922 of the California Labor Code provides that "[a]n employment, having no

14   specified term, may be terminated at the will of either party on notice to the other."  This statutory

15   provision creates a presumption that an employment relationship is terminable at will by either the

16   employer or the employee.  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 665 (1988).  Although

17   Kang alleged in his Complaint that he had an employment contract which was "partly written, partly

18   oral, and partly implied," he admitted in his deposition that he never had a written contract.  (No. ).

19   Further, when Kang detailed the conversations he claimed to have had prior to starting employment,

20   he made no mention of oral promises of the sort alleged in his Complaint.  (Nos. 10-16)..[2/]  Indeed,

21   Kang's only discussions prior to the start of work concerned his salary and a general description of

22   initial working hours and job responsibilities.  (Nos. 14-15).  Moreover, the allegations of the

23   Complaint amount to nothing more than an at-will employment contract, i.e. a contract for no

---

24   [2/]   Specifically, in his Complaint Kang alleges that the "terms" of his contract included
25          everything from assurances that he would be treated fairly and in accordance with the laws
             of the United States of America and the State of California, to alleged guarantees of
26          additional compensation for overtime worked in excess of 50 hours per week.  (Compl.
             ¶ 25(a)-(f)).  Despite repeated questions concerning any representations made prior to or
27          during employment, Kang did not identify any statements remotely resembling the
             allegations contained in paragraph 25 of the Complaint.  Even a cursory review of the
28          allegations in this portion of the Complaint reveals that Kang is simply attempting to fashion
             a cause of action for breach of contract from his discrimination and public policy claims.

1  specified term that can be terminated at the will of either party.  Cal. Lab. C. § 2922.  Specifically,

2  Kang alleges in his Complaint that he had a contract of employment which "would remain in force

3  for so long as plaintiff and defendant remained in agreement that plaintiff would perform his job

4  duties in return for the compensation offered by employer."  (Compl. ¶ 25(c)) (emphasis added).

5  Thus, based on his own allegations, the parties had an at-will employment relationship, for no

6  specified term, which could be terminated whenever either Kang or U. Lim no longer "agreed" that

7  Plaintiff should perform his job duties.

8       Even if Kang's Complaint alleged that he had an implied contract not to terminated absent

9  cause, Kang has no evidence sufficient to support such a claim.  Courts analyze the following

10 factors to determine whether a plaintiff can rebut the presumption of at-will employment and

11 support the existence of an implied employment contract terminable only for cause:  "the personnel

12 policies or practices of the employer, the employee's longevity of service, actions or

13 communications by the employer reflecting assurances of continued employment, and the practices

14 of the industry in which the employee is engaged."  Foley , at 680.

15      In his deposition, Kang admitted that he never received any written materials describing U.

16 Lim's policies or procedures.  (No. 36).  Thus, he cannot rely upon any such policies or procedures

17 in support of his implied contract claim.  As for longevity of service, Kang worked for U. Lim for

18 less than four years.  (Nos. 17; 136-140).  This is far less than the courts have found necessary to

19 support an implied contract to terminate only for good cause.  See Hoy v. Sears Roebuck & Co.,

20 861 F. Supp. 881, 886 (N.D. Cal. 1994) (employee with twenty-six years of service with his

21 employer was nonetheless an at-will employee); Davis v. Consolidated Freightways, 29 Cal. App.

22 4th 354, 367 (1994) (nine-year employee who received regular promotions and salary increases did

23 not thereby become dischargeable only for just cause); Miller v. Pepsi-Cola Bottling Co., 210 Cal.

24 App. 3d 1554, 1559 (1989) (employee who based his allegation of an implied-in-fact contract on

25 promotions and salary increases received over eleven years of employment had no such contract as a

26 matter of law where he could not point to any employer policy limiting the employer's right to

27 terminate him); Hentzel v. Singer Co., 138 Cal. App. 3d 290 (1982) (five years of service

28 insufficient to form implied employment contract).  As these cases demonstrate, longevity of

1   service, even if combined with "satisfactory" performance reviews and salary increases, is not

2   sufficient to create an implied contract.  "[L]engthy service combined with promotions and salary

3   increases are natural occurrences for an employee who remains with an employer for a substantial

4   length of time and do not evince or create an implied agreement for permanent employment . . . ."

5   Tollefson v. Roman Catholic Bishop, 219 Cal. App. 3d 843, 856 (1990).

6          Finally, Kang cannot prevail on his implied contract claim based on the remaining factor,

7   assurances of continued employment.  The law in this area is well-settled.  In Scott v. Pacific Gas &

8   Electric Co., 11 Cal. 4th 454, 467 (1996), the California Supreme Court declared that it was

9   "unquestionably true" that "a number of promises made in the employment relationship are too

10  vague to be enforceable."  The court added:

11             Courts will not enforce vague promises about the terms and conditions of
               employment that provide no definable standards for constraining an
12             employer's inherent authority to manage its enterprise.  It is to be expected
               that many alleged employer promises will be unable to cross this threshold of
13             definition to become enforceable contract claims.

14  Id. at 473.  see also Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal. App. 4th 620, 630 (1995)

15  ("[A] contract for permanent employment, for life employment, for so long as the employee

16  chooses, or for other terms indicating permanent employment, is interpreted as a contract for an

17  indefinite period terminable at the will of either party.") (quoting Foley, 47 Cal. 3d at 678).

18         In this case, Kang alleges that when Yoon talked about the future and his hopes for moving

19  up in the company he told Kang that Kang would come with him to Korea -- which Kang believed

20  meant he would be with the company a "long time."  (No. 40).  Kang also claims that early in

21  Kang's employment Yoon would make statements about different types of employees, i.e. "good"

22  employees and "bad" employees, and told Kang he was the type of employee Yoon would "never

23  fire, or -- even if you make a mistake you stay with me."  (No. 41).  These are the only statements

24  Kang could identify concerning the duration of his employment or the circumstances under which

25  his employment could be terminated.[8]  Additionally, Kang admitted that no other management

26

27  [8]    Although Kang's First Cause of Action does not specifically reference a claim for breach of
       contract with respect to profit sharing, a reading of paragraphs 11 and 25(f) together
       suggests that at least part of his claim is based on alleged promises to pay for overtime in the
28     form of "profit sharing."  Compl. ¶¶ 11, 25(f).  Assuming such a claim has been properly
       pled, Kang has no evidence to support such a claim.  Kang has not identified any promises to

1   employee made representations about the term of his employment or the reasons he could be

2   terminated.  (No. 42-43).

3   　　　The alleged comments by Yoon made early in Kang's employment -- references to the

4   future, Kang going with Yoon to Korea, and vague assertions that Yoon would not fire Kang even if

5   Kang made a mistake -- do not rebut Kang's at-will employment.  See Miller, 210 Cal. App. 3d at

6   1559 (alleged promise by employer that an employee would have a job for the rest of his life, as

7   long as he did his job, was not sufficient to create a for-cause contract); Horn v. Cushman &

8   Wakefield Western, Inc., 72 Cal. App. 4th 798, 817-18 (1999), review filed (Jun. 15, 1999)

9   (statements to the effect that employee's "best days" are ahead of him and that employee has the

10  capability "of playing a key role in our future" do not create a triable issue of fact as to the at-will

11  nature of his employment); Kovatch v. California Casualty Management Co., 65 Cal. App. 4th

12  1256, 1276 (1998) (assurances that employee "had a future with the company and undoubtedly

13  would become a sales manager" do not create a triable issue of fact as to employee's at-will status).

14  Moreover, Kang admitted that he did not rely upon Yoon's earlier statements that Yoon would not

15  fire him.  Rather, due to Yoon's constant threats to terminate employees, including Kang, by the

16  middle of his employment at U. Lim, Kang believed that Yoon might terminate his employment at

17  any time, for any reason.  (Nos. 44-45).

18  　　　In sum, based on Kang's own testimony, there is no valid basis to find that Kang had a

19  contract of employment -- either written, oral or implied -- that altered his at-will status.  As such,

20  he cannot raise a triable issue on this claim.

21  　　　2.　　U. Lim Terminated Kang's Employment For Cause.

22  　　　Even if Kang could create a triable issue of fact as to whether he had an implied contract that

23  he could only be terminated for cause, Kang's claim fails because U. Lim had good cause to

24  terminate Kang.  Kang bears the burden of establishing that he was terminated without good cause.

25  Crosier v. United Parcel Service, Inc., 150 Cal. App. 3d 1132, 1138 (1983); Pugh v. See's Candies,

26

27  pay for overtime hours.  Further, when asked about promises of "profit sharing," Kang
    described generalized comments by Yoon to the effect that U. Lim expected to make big
    profits and "will award these profits back to the employees."  (No. 31).  Again, this type of

28  vague assertion is simply insufficient to support a contract claim.  Scott, 11 Cal. 4th at 473
    (vague promises about the terms and conditions of employment are unenforceable).

1   Inc., 116 Cal. App. 3d 311, 330 (1981).  Under California law, "good cause" is a "'fair and honest

2   cause or reason, regulated by good faith on the part of the party exercising the power.'"  Pugh,

3   116 Cal. App. 3d at 330, quoting R.J. Cardinal Co. v. Ritchie, 218 Cal. App. 2d 124, 145 (1963).

4   Moreover, where the employee at issue occupies a managerial position, "the employer must of

5   necessity be allowed substantial scope for the exercise of subjective judgment."  Pugh, 116 Cal.

6   App. 3d at 330.  See also General Dynamics Corp. v. Superior Court, 7 Cal. 4th 1164, 1179 (1994)

7   (with respect to managerial employees who occupy positions of trust, "an employer has wide

8   latitude in determining the circumstances under which it has just or good cause to terminate the

9   relationship.").

10       In this case, Kang was a management employee of a company with five or fewer employees.

11   (Nos. 6-7).  Kang contends he was required to work very long hours to perform his duties.

12   According to Kang, long hours were also required of other U. Lim employees, as well as

13   supervisory level employees of U. Lim de Mexico.  (No. 27).  It is also undisputed that at the time

14   Kang decided to stop working the hours required of him, U. Lim was under intense pressure to

15   deliver product to a new customer under a short deadline.  (No. 133).  Finally, Kang does not

16   dispute that his termination was solely the result of his refusal to work these hours:

17       Q:    All right. And what did Yoon say when he came on the line?

18       A:    He told me that he knew about I am not working overtimes or Saturdays, that he

19             asked me if I'm going to continue to do so.

20       Q:    And did you respond?

21       A:    Yeah.  I told him that I don't see any reasons why I should stay when there is no

22             other works to be performed. . . . I am married right now, and I cannot tolerate that

23             kind of long hours.  I have to spend more time with my wife.

24       Q:    And that's what you told Yoon, that you could no longer tolerate these long hours

25             now that you were married?

26       A:    Yes.  In the context of this -- when it was not necessary.

27                                      ***

28       Q:    So your position was that you weren't going to work extra hours unless you felt you

1           needed to, and []his position, as far as you understood it, was if you weren't going to

2           do that, he was going to have to let you go?

3      A:      Yeah.  You have to stand up sometimes.  You can't just go [sic] this kind of things

4           go on forever.

5 (Kang Dep. at 573:23-574:18; 577:1-7).  While one may empathize with an employee's desire to

6 reduce his working hours, that does not change the undisputed fact that U. Lim had "good cause,"

7 given Kang's managerial position, to terminate his employment when he refused to work the hours

8 directed by his supervisor.  Accordingly, U. Lim is entitled to summary judgment on Kang's First

9 Cause of Action for this additional reason.

10 **C.     Kang's Breach of the Covenant of Good Faith And Fair Dealing Claim Fails As A Matter of Law.**

11

12       Kang's claim for breach of the covenant of good faith and fair dealing fails for the same

13 reasons as his contract claim.  First, California law is clear that an individual employed at will

14 cannot maintain an action for breach of the covenant of good faith and fair dealing.  Foley, 47 Cal.

15 3d at 698 n.39 ("Because the implied covenant protects only the parties' right to receive the benefit

16 of their agreement, and, in an at-will relationship there is no agreement to terminate only for good

17 cause, the implied covenant standing alone cannot be read to impose such a duty.")  See also Camp,

18 35 Cal. App. 4th at 631 (summary judgment for employer affirmed; covenant of good faith and fair

19 dealing cannot be breached where no implied contract).  Second, Kang cannot maintain a claim for

20 breach of the covenant of good faith and fair dealing because he was terminated for good cause.

21 Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 296 (1995).  Accordingly, summary judgment is

22 warranted as to Kang's Second Cause of Action.[2]

23 **D.     Plaintiff's Claim for Wrongful Termination in Violation of Public Policy is Barred by the One Year Statute of Limitations.**

24       In his Third Cause of Action, Kang seeks relief for alleged wrongful termination in violation

25 of public policy.  Such a claim, however, is subject to California's one year statute of limitation for

26

[2]    To the extent that the first and second claims are brought against individual defendant Yoon,
27 he is entitled to judgment for the additional reason that an individual officer or employee cannot be individually liable for a breach of Kang's alleged employment contract with U.
28 Lim.  See United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 595 (1970); Cleary v. American Airlines, 111 Cal. App. 3d 443, 457 (1980).

1   actions based on injury "caused by the wrongful act or neglect of another . . . ."  California Code of

2   Civil Procedure ("CCP") § 340(3); see Funk v. Sperry Corp., 842 F.2d 1129, 1133 (9th Cir. 1988)

3   (governing statute of limitations for a claim of wrongful discharge in violation of public policy is

4   the one-year limitations period set forth in Section 340(3)); Hinton v. Pacific Enterprises, 5 F.3d

5   391, 394 (9th Cir. 1993) (same); Barton v. New United Motor Mfg., Inc., 43 Cal. App. 4th 1200

6   (1996) (same).  In this case, Kang claims that he was terminated from employment on February 2,

7   1998.  Kang did not file the instant action until February 16, 1999.  Thus his wrongful termination

8   claim is time-barred.[10]

9   **E.      The Court Should Grant Summary Judgment in Favor of Defendants on
         Plaintiff's Title VII Claim Because Defendants Are Not Covered By the Act.**

10

11          1.      U. Lim Never Employed Fifteen Employees At Any Time During  Kang's
                 Employment.

12          For purposes of Title VII, the term employer means "a person engaged in an industry

13   affecting commerce who has fifteen or more employees for each working day in each of twenty or

14   more calendar weeks in the current or preceding calender year . . ."  42 U.S.C. 2000e(b).  However,

15   U. Lim never had fifteen employees at any time during Kang's employment.  (Nos. 6-7).  Thus, U.

16   Lim is not an employer under the Act, and the Fifth Cause of Action must be dismissed as to U.

17   Lim.  See Greenlees v. Eidenmuller Enterprises, Inc., 32 F.3d 197 (5th Cir. 1994) (affirming

18   dismissal of claim against defendant because it employed less than 15 employees and was therefore

19   excluded from Title VII's coverage).

20

---

21   [10]   Even if this claim was not time-barred, it fails on the merits.  Specifically, Kang claims that
         his termination violated public policy because it was in retaliation for protesting unlawful

22         working conditions, "including but not limited to discriminatory treatment of South Korean
         workers, unsafe working hours and conditions, physical and verbal abuse of employees, and

23         sexual harassment of other employees."  He also claims he was terminated in retaliation for
         his refusal to work under the unlawful conditions. (Compl. ¶ 36).  In contrast to these

24         allegations, Kang testified that he never complained about the conduct he now claims to be
         "unlawful." (Nos. 64; 72; 76; 99; 109).  He did not complain about physical abuse, verbal

25         abuse, or the two instances of alleged sexual harassment he claims to have witnessed. (Id.).
         Although he was ultimately terminated for refusing to work the required hours, he never

26         complained before his termination that the working conditions were unsafe or
         discriminatory.  Indeed, he admittedly refused to work these hours because he believed that

27         they were not necessary, and because he wanted to spend more time at home with his wife.
         (No. 137).  Further, Kang cannot state a public policy wrongful termination claim based on

28         Title VII, the FEHA, or any other United States or California law, for the reasons explained
         below.  Thus, even if Kang's claim was not time-barred, his claim fails as a matter of law.

1   2. <u>Yoon Cannot Be Held Individually Liable Under Title VII</u>.

2   In <u>Miller v. Maxwell's International, Inc.</u>, 991 F. 2d 583 (9th Cir. 1993), the Ninth Circuit

3 expressly held that individual officers and supervisory employees <u>do not</u> meet the definition of

4 "employer" under Title VII. In so holding, the <u>Miller</u> court noted:

5    The statutory scheme itself indicates that Congress did not intend to impose
    individual liability on employees. Title VII limits liability to employers with

6    fifteen or more employees . . . in part because Congress did not want to
    burden small entities with the costs associated with litigating discrimination

7    claims. If Congress decided to protect small entities with limited resources, it
    is inconceivable that Congress intended to allow civil liability to run against

8    individual employees.

9 <u>Id.</u> at 587. The court in <u>Miller</u> further held that the definition of "employer" under Title VII, which

10 includes agents of the employer, makes covered <u>employers liable for the acts of their agents but</u>

11 <u>does not render agents personally liable as employers</u>. <u>Id.</u> at 587 (emphasis added). <u>See also</u>

12 <u>Tomka v. Seiler Corp.</u>, 66 F. 3d 1295, 1313-17 (2d Cir. 1995); <u>Gary v. Long</u>, 59 F. 3d 1391, 1399

13 (D.C. Cir. 1995); <u>EEOC v. AIC Security Investigations, Ltd.</u>, 55 F.3d 1276, 1279-82 (7th Cir.

14 1995); <u>Cross v. State of Alabama</u>, 49 F.3d 1490, 1504 (11th Cir. 1995); <u>Grant v. Lone Star Co.</u>,

15 21 F.3d 649, 653 (5th Cir. 1994). Thus, Yoon cannot be held individually liable under Title VII and

16 Kang's Fifth Cause of Action must be dismissed as to Yoon.

17 **F.** **The Court Should Grant Summary Judgment on Plaintiff's FEHA Claim Because the**
   **FEHA does not Provide Relief for Acts of Discrimination Occurring Outside The**

18   **United States.**

19   Unlike Title VII -- which contains express provisions concerning extraterritorial application

20 -- the FEHA is silent as to its applicability to California residents working abroad. However, just as

21 in federal law, there is a presumption that California does not intend its laws to have an

22 extraterritorial affect unless the legislature clearly expresses such an intention. <u>See</u> <u>Diamond</u>

23 <u>Multimedia Systems v. Superior Court</u>, 19 Cal. 4th 1036 (1999). In discussing this presumption,

24 the California Supreme Court noted that:

25    Although a state may have the power to legislate concerning the rights and
    obligations of its citizens with regard to transactions occurring beyond its

26    boundaries, the presumption is that it did not intend to give its statutes
    extraterritorial effect. The intention to make the act operative, with respect to

27    occurrences outside the state, will not be declared to exist unless such an
    intention is clearly expressed or reasonably inferred from the language of the

28    act or from its purpose, subject matter or history.

1    Diamond Multimedia Systems, 19 Cal.4th at 1058, quoting North Alaska Salmon Co. v. Pillsbury,

2    174 Cal. 1 (1916).

3            In North Alaska Salmon Co., the California Supreme Court rejected the notion that the

4    California Workmen's Compensation, Insurance and Safety Act operates extraterritorially such as to

5    provide relief to a California resident for injuries he incurred while working for a California

6    employer in Alaska. In reaching its decision, the court began with the plain language of the statute,

7    noting that "[n]othing is said about the place of injury. Nor is there in any other portions of the act

8    language from which the intention to extend the operation of the statute beyond the territorial limits

9    of the state may be inferred." Id. at 4-5. Noting that the Alaska Legislature has the authority to

10   determine the conditions for which liability will exist for injuries sustained within its boundaries,

11   the court held that "it will not be supposed that the Legislature of this state undertook to pass a law

12   which would trench upon the sovereign powers of any other jurisdiction." Id. at 5. Given the lack

13   of language clearly stating or implying a manifest intent to have it operate extraterritorially, the

14   court relied on settled rules of interpretation, which prohibit giving the act any such effect. Id. at 6.

15           To date, no California court has addressed the precise issue presented here -- whether a

16   California resident working in Mexico for a California corporation is covered by the Fair

17   Employment and Housing Act, where the alleged unlawful conduct occurred outside the state's

18   territorial boundaries. However, when confronted with this issue under Title VII, the United States

19   Supreme Court, in EEOC v. Arabian American Oil Co., 499 U.S. 244 (1991), held that Title VII did

20   not apply to U.S. citizens working abroad for U.S. companies because the Act did not express an

21   intention to have extra-territorial coverage. Thereafter, Congress passed the 1991 Civil Rights Act,

22   which amended Title VII to provide coverage for U.S. citizens working abroad for U.S. companies.

23   See 42 U.S.C. 2000e-1.

24           Here, as in Arabian, the FEHA does not express an intention to apply to individuals working

25   in another country. Significantly, despite several recent amendments to the FEHA, including major

26   expansion of its coverage in 1999, the California legislature has never expressed an intention to

27   apply the FEHA to the employment of individuals working outside the State of California, let alone

28   outside the United States. To the contrary, when the FEHA was amended in 1992 (after the Arabian

1   decision) the California legislature declared that "[a] primary public policy of the Fair Employment

2   and Housing Act is the prevention and elimination of unlawful employment practices <u>in the State of</u>

3   <u>California</u>." Cal. Gov. Code § 12920.5, Legislative Findings (emphasis added). Thus, the

4   legislative statement that the Act was meant to prevent unlawful employment practices in

5   California, the lack of any statutory intent to apply the FEHA to discrimination against individuals

6   working in another country, and the general presumption against extraterritorial application, compel

7   a finding that the FEHA does not apply to Kang's employment by U. Lim in Mexico. <u>See</u> <u>Denty v.</u>

8   <u>Smithkline Beecham Corp</u>, 907 F. Supp. 879, 886 (E.D. Pa.), aff'd 109 F.3d 147 (3d Cir. 1997)

9   (refusing to give extraterritorial effect to the Pennsylvania Human Relations Act ("PHRA") because

10  "great mischief would be accomplished by allowing each state to regulate the conduct of individuals

11  abroad").

12  **G.**    **Assuming _Arguendo_ That Title VII or The FEHA Applies, The Court Should Grant**
**Summary Judgment in Favor of Defendants Because Kang Cannot Show That He Was**
13      **<u>Discriminated Against on the Basis of His National Origin.</u>**

14      It is not clear from Kang's pleading whether his Fourth and Fifth Causes of Action are based

15  solely on alleged discriminatory termination or also hostile work environment harassment.

16  However, in either event, Defendants are entitled to summary judgment.

17      1.    <u>The Standard for Deciding a Discrimination Case.</u>

18      Kang alleges that U. Lim terminated his employment in violation of Title VII and the FEHA

19  because of his national origin, South Korean.   Where, as here, there is no direct evidence of

20  discrimination, the burden of proof is governed by the framework erected by the Supreme Court in

21  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and clarified in <u>St. Mary's Honor Center</u>

22  <u>v. Hicks</u>, 509 U.S. 502 (1993).   Under that framework, the plaintiff has the initial burden of

23  establishing a _prima facie_ case of discrimination by a preponderance of the evidence.   <u>Texas Dep't.</u>

24  <u>of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981); <u>Casillas v. United States Navy</u>, 735 F.2d

25  338, 342 (9th Cir. 1984).   If the plaintiff succeeds in establishing a _prima facie_ case, the burden of

26  going forward then shifts to the employer, who must merely articulate a legitimate, non-

27  discriminatory reason for the employee's discharge.   <u>Burdine</u>, 450 U.S. at 254.   Once the employer

28  has articulated a legitimate business reason for the decision, any presumption of discrimination

1  drops from the case, and the plaintiff then must satisfy the ultimate burden of proving

2  discrimination. Id. at 256.

3      The ultimate burden of persuasion remains at all times with the plaintiff, who must prove by

4  a preponderance of the evidence that the alleged reasons proffered by the defendant were pretextual

5  and that the defendant intentionally discriminated against the plaintiff. Id. at 252-53; Hicks,

6  509 U.S. at 515-16; Casillas, 735 F.2d at 342. In so doing, the plaintiff must establish not only that

7  the articulated reason was "fabricated," but that discrimination was "the real reason" for the adverse

8  employment decision. Hicks, 509 U.S. at 515-16.

9      This method of proof, although discussed in terms of Title VII, applies with equal force to

10  Kang's claim under the FEHA. See Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 n. 2

11  (9th Cir. 1997) ("the test for determining whether there is discrimination under Title VII applies to

12  FEHA claims as well.") The elements of proof are the same under both statutes. See; University of

13  S. Cal. v. Superior Court, 222 Cal. App. 3d 1028 (1990) (California courts look to Title VII case

14  law to resolve FEHA claims).

15      2.      Kang Cannot Establish a *Prima Facie* Case of Discriminatory Discharge.

16      To establish a *prima facie* case of discrimination, a plaintiff must establish that (1) he is a

17  member of a protected class, (2) adverse employment action was taken against him, (3) he was

18  satisfactorily performing his job at the time, and (4) the adverse employment action occurred under

19  circumstances giving rise to an inference of discrimination. Pejic v. Hughes Helicopters, Inc.,

20  840 F.2d 667, 671-72 (9th Cir. 1988).

21      Kang fails to establish a *prima facie* case of national original discrimination because, by his

22  own admission, he was not satisfactorily performing his job. Kang had been working for U. Lim for

23  several years, and during that time all of the U. Lim managers had to work long hours. (No. 133;

24  135). Indeed, in the months leading up to his termination, all U. Lim employees were working

25  extremely hard to satisfy the demands of a new client. (No. 133). Kang had become increasingly

26  frustrated with the long hours, and simply stopped working the hours. (No. 131). When he was

27  first confronted by Mr. Cho about his failure to work the required hours, Kang simply ignored his

28  supervisor's inquiries. (No. 134). When Yoon spoke to him about his decreased working hours,

1   Kang told him he could no longer work these hours due to his home life.  (No. 137).  According to

2   Kang, Yoon told Kang he could not allow Kang to refuse to work the required hours, and, therefore,

3   terminated Kang's employment.  (Nos. 138-140).  Thus, by his own admission, Kang was not

4   satisfactorily performing his job as he had refused to come to work for the required hours.

5           Further, Kang cannot establish that his termination occurred under circumstances giving rise

6   to an inference of discrimination.   It is undisputed that at the time of his termination, all of the

7   employees of U. Lim, including Yoon, were Korean.  (Nos. 6, 7).  It is undisputed that at the time of

8   his termination the majority of U. Lim's employees were working long hours to satisfy U. Lim's

9   client demands.  (No. 133).  Kang admitted that he was terminated due to his hours.  (No. 140).

10  Kang also admitted that Yoon made no reference to Kang's national origin in terminating his

11  employment.  (No. 100).  Under these circumstances there is simply no basis to infer that Yoon

12  terminated Kang because of his Korean national origin.  In sum, the circumstances surrounding

13  Kang's employment and the alleged adverse employment action do not raise any inference of

14  national origin discrimination, much less create a triable issue.

15          3.      U. Lim Had a Legitimate, Non-Discriminatory Reason for Terminating Kang's
                    Employment and Kang Has Adduced No Evidence That This Reason Was a Pretext
16                  for National Origin Discrimination.

17          Even if a plaintiff meets his initial burden of establishing a *prima facie* case, which Kang has

18  not, the only burden on defendant is to <u>articulate</u> a legitimate, non-discriminatory reason for the

19  decision.  <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 888-889 (9th Cir. 1994).  Once the employer

20  meets the burden of offering a legitimate, non-discriminatory reason for the employment decision,

21  the plaintiff must demonstrate that the proffered reason was a pretext for discrimination.  <u>Wallis</u>,

22  26 F.3d at 889-90.  Further, a plaintiff cannot survive summary judgment simply by second

23  guessing the employer's legitimate, non-discriminatory reason for the employee's termination.

24  <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 938 F.2d 509, 527 (3d Cir. 1992), <u>cert. denied</u>,

25  114 S. Ct. 88 (1993) (plaintiff could not meet her burden of showing pretext by questioning

26  employer's selection criteria; absent evidence of discrimination, employers may make business

27  decisions and courts will not interfere with or second-guess such decisions); <u>Sharpe v. AT&T</u>,

28  66 F.3d 1045, 1050 (9th Cir. 1995) ("We have long held that discrimination laws are 'not intended

1   as a vehicle for general judicial review of business decisions.'"), quoting <u>Douglas v. Anderson</u>,

2   656 F.2d 528, 535 (9th Cir. 1981).

3        In this case, U. Lim's legitimate, non-discriminatory reason for Kang's termination, as

4   admitted by Kang himself, was Kang's refusal to work the required hours. (No. 140). Thus, U. Lim

5   has satisfied its burden. Where, as here, the employer produces a legitimate, non-discriminatory

6   reason for its action, that response destroys any presumption of discrimination arising from the

7   *prima facie* case. <u>Hicks</u>, 509 U.S. at 510-11 (1993). To establish a genuine issue regarding pretext,

8   Kang must present evidence allowing the trier of fact to infer discrimination, not just that the

9   defendant's explanation is false. <u>Id.</u>; <u>Wallis</u> 26 F.3d at 892.

10       The plaintiff has the burden of convincing the fact-finder "both that the reason was false, and

11  that discrimination was the real reason." <u>Hicks</u>, 509 U.S. at 515. "[I]t is not enough . . . to

12  disbelieve the employer, the fact finder must believe the plaintiff's explanation of intentional

13  discrimination." <u>Id.</u> at 519. Thus, "a plaintiff cannot defeat summary judgment simply by making

14  out a *prima facie* case." <u>Wallis</u>, 26 F.3d at 890 (citing <u>Schuler v. Chronicle Broadcasting Co.</u>,

15  793 F.2d 1010, 1011 (9th Cir. 1986). "In response to the defendant's offer of non-discriminatory

16  reasons the plaintiff must produce '<u>specific, substantial evidence of pretext</u>.'" <u>Id.</u> (citation omitted)

17  (emphasis added). Where "evidence to refute the defendant's legitimate explanation is totally

18  lacking, summary judgment is appropriate even though plaintiff may have established a minimal

19  *prima facie* case." <u>Wallis</u>, 26 F.3d at 890 (citing cases granting summary judgment where evidence

20  of pretext was lacking); <u>accord</u>, <u>Breitman v. May Co. of California</u>, 37 F.3d 562, 565 (9th Cir.

21  1994) (affirming summary judgment where plaintiff presented "no substantial evidence" that age

22  played any part in the decision to terminate her employment).

23       Here, Kang not only lacks "specific, substantial evidence of pretext," he has no evidence

24  whatsoever. He admitted that Yoon terminated his employment solely because of the working

25  hours dispute. Thus, Kang has admitted that the reason for his termination was a direct

26  consequence of his personal decision not to work the required hours so that he could spend more

27  time with his then pregnant wife. (No. 137). Kang conceded that if he was terminated because he

28  would not agree to continue working overtime and Saturdays (No. 139). Further, Kang has no

1   evidence that Yoon, a fellow Korean, terminated Kang because he was Korean. Thus, no reasonable

2   fact finder could find that Kang's termination was a pretext for discrimination, and summary

3   judgment is warranted as to Kang's Fourth and Fifth causes of action.

4       4.   Yoon Cannot Be Held Individually Liable for The Alleged Discriminatory
             Termination.

5       For the same reasons discussed in Section III(E)(2), *supra*, Yoon cannot be held individually

6   liable under Title VII for Kang's alleged discriminatory termination. The same result is required

7   under the FEHA. In Reno v. Baird, 18 Cal. 4th 640, 76 Cal. Rptr. 2d 499, 513-514 (1998), the

8   Court held that individual supervisors, who do not themselves qualify as employers under the

9   FEHA, cannot be sued under the FEHA for alleged discriminatory acts. The California Supreme

10  Court concluded that the FEHA, like similar federal statutes, allows persons to sue and hold liable

11  covered employers for discrimination, but not individuals. Reno, 76 Cal. Rptr. 2d at 500. The

12  Court approved of the holding in Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55 (1996),

13  that individual supervisors cannot be held liable for discrimination claims arising out of the

14  performance of necessary personnel-management duties or "commonly necessary personnel

15  management actions such as hiring and firing, job or project assignments, office or work station

16  assignments, promotion or demotion, performance evaluations, the provision of support, the

17  assignment or nonassignment of supervisory functions, deciding who will and who will not attend

18  meetings, decide who will be laid off, and the like." Reno, 76 Cal. Rptr. 2d at 502 (quoting Janken,

19  46 Cal. App. 4th at 63-65). Therefore, even if Yoon took the action of firing Kang, he cannot be

20  held individually liable under the FEHA for this exercise of his management duties.

21      5.   Kang's Hostile Work Environment Claim Fails As A Matter of Law.

22          a.   Kang's claim is barred by the statute of limitations.

23      To proceed under Title VII an individual who alleges employment discrimination must file a

24  charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") within

25  300 days of the occurrence of the allegedly unlawful act. 42 U.S.C. §2000e-5(e). It is a general rule

26  that any employment practice which occurs outside the applicable charge-filing limitations period is

27  untimely and may not serve as the basis for damages in a Title VII action. See Delaware State

28

1-LA/500771.1                                    21                                    99cv0659

1   College v. Ricks, 449 U.S. 250, 258 (1980); United Air Lines, Inc. v. Evans, 431 U.S. 553, 558

2   (1977); Draper v. Couer Rochester, Inc., 147 F.3d 1104 (9th Cir. 1998) (because the limitations

3   period under Title VII operates as a statute of limitations . . . a claim of discrimination under the Act

4   will not be sustained if it is based on an event or events that occurred more than 300 days before the

5   filing of a charge); Goodluck v. Kelly Tractor Co., 733 F. Supp. 1479 (S.D. Fla. 1990) (Section

6   2000-5(e) operates to shield employers from damages for any conduct they may have engaged in

7   prior to the appropriate charge-filing limitations period).  Here, Kang filed a charge of

8   discrimination with the EEOC on November 13, 1998.  (No. 142).  The 300-day period prior to the

9   filing of such charge extended back to January 17, 1998.  Therefore, the only alleged discriminatory

10  or harassing acts that are timely for purposes of Kang's Title VII action are those occurring on or

11  after January 17, 1998.

12          Similarly, the FEHA requires a plaintiff first to file a complaint of discrimination with the

13  Department of Fair Employment and Housing within one year of the date on which the alleged

14  unlawful employment practice occurred.  Cal. Gov. Code § 12960.  In Fisher v. San Pedro Peninsula

15  Hospital, 214 Cal. App. 3d 590 (1989), the court confirmed that hostile work environment claims,

16  like all other discrimination claims, are subject to the FEHA's one-year statute of limitations.  The

17  court noted that acts beyond the statute of limitations "might be relevant to showing a pattern of

18  continuous harassment," but declared that "if only a couple of acts occurred during the one year

19  preceding the filing of the complaint, then [a plaintiff] cannot properly plead a claim for

20  environmental sexual harassment."  Id. at 613.  Here, Kang filed his charge with the DFEH on

21  October 15, 1998.  (No. 141).  Thus, to be actionable under the FEHA, the alleged harassing

22  conduct must have occurred after October 15, 1997.

23          In this case, Kang admitted that he has no specific recollection of any of the complained-of

24  harassment occurring from October 1997 through the date of his termination on February 2, 1998.

25  (Nos. 104-107).  Kang testified that no inappropriate conduct occurred in January or February (thus

26  barring his Title VII claim), and simply could not recall any alleged harassing conduct within the

27  limitations period under the FEHA.  Indeed, Kang admitted that Yoon was often away from the

28  Tijuana facility in late 1997 and early 1998.  (No. 104).  Given these undisputed facts, Kang's

1    harassment claims are clearly time-barred. See Fisher, 214 Cal. App. 3d at 614 n.9 (plaintiff's

2    sexual harassment claim against doctor based on sexual insults and offensive touchings was barred

3    by FEHA's one-year statute of limitations). See also Regents of Univ. of Cal. v. Superior Court, 33

4    Cal. App. 4th 1710 (1994) (summary judgment granted where plaintiff's FEHA claims were time-

5    barred); DFEH v. California State Univ., Hayward, FEHC Dec. No. 88-18 (1988) (sexual

6    harassment complaint alleging supervisory harassment in the nature of sexual comments, conduct,

7    profanity, jokes and display of pornographic magazines dismissed because the allegations fell

8    outside the one-year statute of limitations).

9           b.   Kang cannot demonstrate that he was subject to a hostile work environment
                 because of his national origin.

10           In order to survive summary judgment in a Title VII or FEHA "hostile work environment"

11   harassment case, the plaintiff must prove that the work environment was "sufficiently severe or

12   pervasive to alter the conditions of employment and create an abusive working environment."

13   Fisher., 214 Cal. App. 3d at 609-610 (hostile work environment sexual harassment) (quoting

14   Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986)); see Muller v. Automobile Club of S. Cal., 61

15   Cal. App. 4th 431 (1998) (applying Fisher hostile environment harassment analysis to FEHA mental

16   disability and medical condition harassment case). Kang must show that the alleged harassment

17   "had the effect of unreasonably interfering with the employee's work performance and creating an

18   objectively intimidating, hostile, or offensive work environment . . . ." Crawford v. Medina General

19   Hosp., 96 F. 3d 830, 835 (6th Cir. 1996) (applying a hostile environment analysis in an age

20   harassment action). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious

21   racial comments." Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994).

22           The Court should consider the severity and nature of the alleged conduct, the frequency of

23   the offensive encounters, the total number of days over which all the offensive conduct occurred,

24   and the context in which the harassing conduct occurred. Fisher, 214 Cal. App. 3d at 610. The

25   standard for plaintiffs to maintain their claim is high, as the Fisher court explained: "Acts of

26   harassment cannot be occasional, isolated, sporadic or trivial, rather, the plaintiff must show a

27   concerted pattern of harassment of a repeated, routine or generalized nature." Id. Finally, and most

28

1   significantly for purposes of this Motion, Kang also must demonstrate that he  was subjected to

2   harassment because of his national origin.  Young v. Will County, 882 F.2d 290, 294 (7th Cir.

3   1989) (conduct and comments directed at plaintiff's work performance without evidence of age-

4   based motivation are insufficient to survive summary judgment).

5          Even if Kang could recall any acts of alleged harassment which occurred within one or both

6   of the limitations periods, a few acts would not be a concerted pattern of harassment.  Further, there

7   is no evidence sufficient to support a finding that Yoon's alleged abuse was motivated by Kang's

8   national origin.  Again, U. Lim's entire workforce was Korean, including Yoon, the alleged

9   harasser.  (No. 6-7).  In his deposition, Kang gave many different explanations for Yoon's alleged

10  behavior.  Kang claimed that Yoon was angry at everyone, including the Mexican workers who

11  Yoon yelled at.  (No. 48; 55-56).  Kang claimed that Yoon would get angry about a work-related

12  problem and become abusive.  (No. 60; 71).  Kang claimed that Yoon abused him and Park rather

13  that two other employees of Korean national origin, Ko and Cho, because Kang and Park had more

14  responsibility and Yoon was trying to train them for the future.  (No. 52-53).  Indeed, Kang

15  admitted that Yoon never hit, kicked or threw anything at Cho.  (No. 85-86).  Thus, Kang's own

16  testimony demonstrates that Yoon's alleged conduct was simply not motivated by Kang's national

17  origin.  Significantly, Kang admitted that Yoon never made any derogatory comments about

18  Koreans.  (No. 100).

19         Defendants anticipate that Kang will seek to rely upon Yoon's alleged comments about

20  "lazy" Americans and Mexicans, and that Koreans work harder than Americans.  However, such

21  comments clearly do not create an inference of discriminatory animus towards Koreans.  Indeed,

22  such comments, if anything, suggest that Yoon favored Koreans.  There is simply nothing about

23  these alleged comments which would be sufficient to support a finding that Yoon held

24  discriminatory animus towards Koreans.  See Pacanza v. Shell Oil Company, 1997 WL 227980

25  (N.D. Cal. March 19, 1997) (alleged derogatory comments about African-American employees is

26  not evidence of discriminatory animus towards Asians or Filipinos).

27         Moreover, Kang has testified that Yoon's treatment of him was motivated by a variety of

28  reasons -- from Yoon's anger over work-related problems to his warped sense of training Kang for

24                                                                                           99cv0659

1   the future -- none of which had anything to do with Kang's national origin.  Kang attempts to make

2   a claim based solely on the fact that he is Korean, and bad things allegedly happened at his work

3   place.  However, it is firmly established that to survive summary judgment a plaintiff must do more

4   than simply point to his protected characteristic and the complained of conduct; a plaintiff must link

5   the two.  Hardin v. S.C. Johson & Son, Inc., 167 F.3d 340 (7th Cir. 1999) (summary judgment in

6   favor of employer on employee's race and sex harassment claim where supervisor's verbal and non-

7   verbal abuse was directed towards all workers, and had no racial or gender overtones to suggest that

8   the supervisor was motivated by discrimination); Ahmed v. Berkshire Medical Center, Inc., 1998

9   WL 157016 (D. Mass. March 31, 1998) (summary judgment in favor of employer warranted on

10  national origin discrimination claim where employee did not provide any evidence that

11  discriminatory animus played a role in the decision making process -- plaintiff's "unsubstantiated

12  allegations and interpretation of events will not suffice to establish evidence of discriminatory

13  intent"); Starr v. Legal Aid Society of the City of New York, 1998 WL 477733 (S.D.N.Y. Aug. 14,

14  1998) (plaintiff's speculation that her disability must have played a role in the decision making

15  process is "wholly insufficient" at the summary judgment stage).  In this case, Kang has no

16  evidence to demonstrate a causal connection between the complained of conduct and his national

17  origin.  To the contrary, he has testified to multiple explanations for Yoon's alleged abuses, none of

18  which relate to Kang's national origin.  Accordingly, summary judgment is proper as to Kang's

19  Fourth and Fifth Counts for this additional reason.

20                              IV.  **CONCLUSION**

21        For the foregoing reasons, defendants U. Lim America Inc. and Tae Jin Yoon respectfully

22  request that this Court grant their motion for summary judgment, or, in the alternative, summary

23  adjudication.

24  DATED:  January ⎯21⎯ , 2000              Respectfully submitted,

25                                          JOHN S. BATTENFELD
                                            MELISSA M. MULKEY
26                                          MORGAN, LEWIS & BOCKIUS LLP

27                                          By_____
                                               John S. Battenfeld
28                                          Attorney for Defendants U. Lim America Inc.
                                            and Tae Jin Yoon

1-LA/500771 1                         25                              99cv0659

**PROOF OF SERVICE BY MAIL**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 22nd Floor, Los Angeles, California 90071.

On January 21, 2000, I caused the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF CLAIMS** to be served by mail upon the person(s) shown below, by placing a true and correct copy (copies) thereof in an envelope (envelopes) addressed as follows:

Richard E. Grey
LAW OFFICES OF RICHARD E. GREY
409 Camino Del Rio South, Suite 303
San Diego, California 92108

sealing said envelope(s), and placing it (them) for collection and mailing on that same date following the ordinary business practices of Morgan, Lewis & Bockius LLP, at its place of business, located at 300 South Grand Avenue, 22nd Floor, Los Angeles, California 90071. I am readily familiar with the business practices of Morgan, Lewis & Bockius LLP for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practices the envelope(s) would be deposited with the United States Postal Service that same day in the ordinary course of business.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 21, 2000 at Los Angeles, California.

SHARON L. SCOTT _____     _Sharon L. Scott_____
                                    Signature

__  Service on one or more parties is (also) being done by personal service and a Proof of Personal Service will be filed with the court forthwith.

l-LA/500271.1

99cv0659