Case 3:99-cv-00659-JM-RBB   Document 43   Filed 03/06/00   PageID.1560   Page 1 of 10

USDC SCAN INDEX SHEET










LMH    3/7/00    9:18
3:99-CV-00659    KANG V. U LIM AMERICA INC
*43*
*O.*

FILED

00 MAR -6 AM 8: 17

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOO CHEOL KANG, | CASE NO. 99-0659 JM(RBB) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| U.LIM. AMERICA, INC; TAE YIN YOON, | |
| Defendant. | |

Defendants U. Lim America, Inc. ("U.Lim") and Tae Yin Yoon ("Yoon") move for summary judgment on all claims asserted in Plaintiff Soo Cheol Kang's ("Kang") wrongful termination complaint. Plaintiff opposes the motion. For the reasons set forth below, the motion for summary judgment is granted.

## BACKGROUND

Two months after Plaintiff became a naturalized United States citizen, on April 15, 1994, Plaintiff commenced his employment with U.Lim, a California corporation with its principal place of business in San Diego. U.Lim is a owned by Ki Hwa Yoon who is also Chairman of U.Lim Electronics Co., Ltd, a corporation organized under the laws of the Republic of Korea. Throughout Plaintiff's employment with U.Lim, there were never more than five employees with U.Lim. Each of the U.Lim's employees worked at a manufacturing facility located in Tijuana, Mexico. The facility was operated by U.Lim de Mexico, a Mexican corporation. All of the current and former employees of U.Lim are of Korean national origin, whereas the employees of U.Lim de Mexico are of Mexican ancestry and nationality.



99cv0659

1    The three U.Lim related entities are in the business of manufacturing and marketing electronic components. U.Lim buys the electronic components from its exclusive supplier, U.Lim Electronics of Korea, and then U.Lim de Mexico manufactures the products. U.Lim supervises the maquiladora operation.

When Plaintiff commenced his employment with U.Lim. his work hours were approximately 7:30 a.m. to 5:30 p.m., Monday through Friday. After the first month his hours steadily increased and, by April 1995, Plaintiff was regularly working until 8:00 p.m. every night. During the first year he also worked approximately 40 Saturdays and 25 Sundays. Plaintiff continued to work long hours throughout his employment with U.Lim. In late December 1997, Plaintiff learned that his wife was pregnant and he spoke with one of his supervisors, Jae Ho Cho, about his need to spend more time at home. Plaintiff said that it was not necessary for him to be there on Saturday and that a Mexican supervisor could handle his duties (at this point in time, Plaintiff was the manager in charge of the warehouse). Jae Ho Cho informed Plaintiff that it was his responsibility to be there when the plant was in operation, including Saturdays and Sundays.

Without discussing his work hour plans with anyone, in December 1997 Plaintiff began leaving work by 6:30 p.m. and did not come in to work on Saturday or Sunday. On February 2, 1998, Yoon, who was in Korea at the time, called Plaintiff to ask if he was no longer going to work evenings and weekends. Plaintiff suggested to Yoon that the department heads could rotate overtime hours. He also stated that he would not work when it was not necessary. Yoon indicated that it saddened him but if Plaintiff would not work the overtime hours required, he had to let him go.

Not only did Plaintiff work long hours throughout his four year term of employment with U.Lim, but he was subjected to verbal and physical abuse as well. At the daily meetings conducted by Yoon with the department heads he would repeatedly swear and ridicule them by calling them names such as "cripples," "stupid," "sons of vagina" (a particularly vulgar Korean expression) and other epithets. On many occasions Yoon would kick Plaintiff, hit Plaintiff with a metal ruler, hit him with a sharp object on his head, and drag him around the office by his ear.

Unlike most discrimination cases, Plaintiff claims he was discriminated against not because he was perceived as inferior but, rather, because he was perceived as superior on account of his shared

ethnic background with his employer. It was because of his Korean ancestry that he was expected to work longer hours and endure harsher treatment than any other nationality.

Plaintiff pursued his administrative remedies with the EEOC and the Department of Fair Employment and Housing ("DFEH") and, on February 16, 1999, Plaintiff commenced an action in the Superior Court of the State of California for the County of San Diego alleging five causes of action for (1) breach of the employment contract; (2) breach of the implied covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) employment discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); and (5) employment discrimination in violation of Title VII. On April 5, 1999, Defendants removed the action to this court based upon federal question jurisdiction. Defendants now move for summary judgment on all claims.

## DISCUSSION

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. At 2553 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962). Any doubt as to the

existence of any issue of material fact requires denial of the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

**The Breach of Contract Claim**

Defendants move for judgment on this claim on grounds that Plaintiff was an at will employee and could be discharged at any time. "An employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal. Labor Code §2922. This statutory provision creates a presumption that an employment relationship is terminable at will by either the employer or the employee. See <u>Foley v. Interactive Data Corp.</u>, 47 Cal.3d 654, 665 (1988). "Absent any contract . . . the employee can be fired with or without good cause." <u>Id</u>. In determining whether there is a contract of employment, courts look to the totality of the employment relationship including the terms of a written contract, consideration, "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." <u>Id</u>. at 680.

Applying the appropriate test for determining whether there exists a contract of employment, the court concludes that Plaintiff is an at-will employee. There is no material genuine issue of fact that there is no written contract, Plaintiff was never provided any written materials regarding his employment relationship, Plaintiff's longevity of employment - four years - is insufficient to support an implied contract to terminate only for good cause, see <u>Hoy v. Sears Roebuck & Co.</u>, 861 F.Supp. 881, 886 (N.D. Cal. 1994), and the types of assurances of continued employment relied upon by Plaintiff are insufficient, as a matter of law, to create an implied contract of employment. "Courts will not enforce vague promises about the terms and conditions of employment that provide no definable standards for constraining an employer's inherent authority to manage its enterprise. It is to be expected that many alleged employer promises will be unable to cross this threshold of definition to

- 4 -

99cv0659

become enforceable contract claims." Scott v. Pacific Gas & Electric Co., 11 Cal.4th 454, 467 (1996).

The statements concerning continued employment, when viewed in the context of the totality of the employment relationship, fail to establish anything but an at will employment relationship. Viewing only those statements supportive of Plaintiff, the references to future employment such as the following statements do not create a genuine issue of material fact: Yoon's statement that "For certain kind of people, I would not fire him if things go wrong and perform that duty to make mistake, anything goes wrong. But for you, I'm going to take you to the end;" "[y]ou and [another employee] are the kind of people that I will never fire -- even if you make a mistake, you stay with me;" and statements to the effect that Plaintiff would go to Korea for further training. Statements such as these are too vague and insubstantial to create a contract for employment. See Miller v. Pepsi-Cola Bottling Co., 210 Cal.App.3d 1554, 1559 (1989) (alleged promise by employer that an employee would have a job for the rest of his life, as long as he did his job, was not sufficient to create a for-cause contract); Kovatch v. California Casualty Management co., 65 Cal.App.4th 1256, 1276 91998) (assurances that employee "had a future with the company and undoubtedly would become a sales manager" do not create a triable issue of fact in connection with employee's at will status); Horn v. Cushman & Wakefield Western, Inc., 72 Cal.App.4th 798, 817-18 (1999), review filed (June 15, 1999) (statements to the effect that employee's "best days" are ahead of him and that employee has the capability of "playing a key role in our future" do not create a triable issue of fact as to the at will nature of the employment relationship).[1]

In sum, based upon the record before the court, Plaintiff cannot establish that the employment relationship was anything other than an at will employment relationship. As such, Defendant's motion for summary judgment on the breach of contract action is granted.

**The Breach of the Covenant of Good Faith**

Because Plaintiff cannot establish a contractual employment relationship, as a matter of law, Plaintiff cannot prevail on an action for breach of the covenant of good faith and fair dealing. See

---

[1] The most troubling argument raised by Plaintiff concerns the verbal and physical abuse inflicted by Yoon upon Plaintiff. However, this argument is better addressed in conjunction with the wrongful termination in violation of public policy claim, rather than as a breach of contract claim. Accordingly, this argument is further addressed below. The court also observes that Plaintiff does not allege any state law claims for assault, battery, or emotional distress.

Foley, 47 Cal.3d at 698 n.39. Accordingly, the court also grants summary judgment on the second cause of action.

**The Wrongful Termination Claim**

Defendant moves for summary judgment on grounds that this claim is barred by California's one year statute of limitations. Here, Plaintiff was terminated on February 2, 1998 and did not commence the present action until February 16, 1999. Thus, absent equitable tolling, this claim is time barred.

Before reaching the equitable tolling argument, the court must determine whether the wrongful termination claim is subject to equitable tolling principles in the first instance. The court observes that Plaintiff fails to cite a single California authority permitting equitable tolling of separate and distinct claims while an administrative discrimination complaint is pending with the DFEH or the EEOC. In Arnold v. United States, 816 F.2d 1306 (9th Cir. 1987), the plaintiff sought equitable tolling of her tort claims for emotional distress, assault, battery and false imprisonment while she pursued her discrimination claims with the EEOC. The Ninth Circuit concluded that California state law would only toll those claims seeking relief for the same harm. Id. at 1306.

> Arnold asserts that filing her Title VII claim tolled the limitations period for her tort claims. Although sexual harassment may be redressed through a claim brought under Title VII, . . . the wrong underlying Arnold's Title VII claim is distinct from that underlying her state-law tort claims. In her state-law claims Arnold seeks to vindicate not her right to be free from discrimination in the workplace, but rather her right to be free from "bodily or emotional injury caused by another person." Indeed, it is precisely because these wrongs are different that Arnold's state-law claims are not precluded by Title VII.

Id. (citations omitted); see also Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975) (the timely filing of an EEOC discrimination charge does not toll the statute of limitations for a 42 U.S.C. §1981 claim). The California Supreme Court has also tacitly approved this approach in Rojo v. Kliger, 52 Cal.3d 65, 276 (1990), wherein it advised that a plaintiff could pursue both a wrongful termination tort claim in state court and then "amend[] his or her complaint to join the FEHA cause of action once the [DFEH] has issued a right-to-sue letter." Id.

The same principal enunciated in Arnold has been extended by numerous district courts to encompass the identical state law claims raised before this court. See Miller v. LaRosa, 1990 U.S. Dist. Lexis 7803 (N.D. Cal. May 18, 1990) (the filing of a discrimination claim with the EEOC does

- 6 -

not toll the one year statute of limitations on a claim for emotional distress); Estes v. Allied Signal, Inc., 1998 U.S. Lexis 18206 (N.D. Cal. Nov. 12, 1998) (the filing of a claim under FEHA does not toll the one year statute of limitations on a claim for intentional or negligent infliction of emotional distress); Burmeister v. Automatic Data Processing, 1990 U.S. Dist. Lexis 2230 (N.D. Cal. March 1, 1999) (the filing of a claim under FEHA does not toll the one year statute of limitations on a claim for wrongful termination in violation of public policy).

Although Plaintiff's wrongful termination claim arises from the same set of circumstances as the FEHA and EEOC claims, these claims do not seek to vindicate his rights to be free from discrimination in the workplace but, rather, Plaintiff's right to continued employment. Accordingly, the court concludes that these causes of action are barred by the one year statute of limitations and not subject to equitable tolling principles.

**The Title VII and FEHA Claims**

Among other grounds, Defendants assert that summary judgment is appropriate because Plaintiff fails to establish a prima facie case of discrimination. The basic allocation of burdens and order of proof in a Title VII case requires:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). To establish a prima facie case of employment discrimination, Plaintiff must show that he (1) is a member of a protected class; (2) satisfactorily performed the position's job requirements; (3) suffered an adverse employment decision; and (4) was treated less favorably than similarly situated employees. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990).

Defendants assert that there is no evidence that Plaintiff was satisfactorily performing his job or that he was treated less favorably than similarly situated employees. The undisputed evidence reveals that Plaintiff unilaterally stopped working overtime in December 1997 because he wanted to

spend more time with his family. While the record is unclear whether Plaintiff quit or was fired, the undisputed evidence indicates that Yoon required Plaintiff to work overtime (evenings and weekends) and Plaintiff refused to work overtime. While the parties dispute whether the decision to require overtime was fair or whether there were less onerous alternative overtime staffing options available, this exercise of business judgment by U.Lim, regarding the operation and staffing of its production facility, is a legitimate one. While harsh and perhaps unfair, the evidence supports only one conclusion: Plaintiff was discharged because he did not want to work the hours required of him -- the same hours worked by other employees of U.Lim who were required to be present while the plant was in production. Having demonstrated that Plaintiff was not satisfactorily performing his job, Plaintiff must come forward with evidence to raise a triable issue of fact concerning his job performance.

Plaintiff responds that the requirement to work overtime hours was discriminatory precisely because of his Korean ancestry. The long overtime hours were only required of the employees of Korean ancestry and not those of Mexican ancestry. This argument fails for several reasons. First, this evidence fails to raise an inference that Plaintiff satisfactorily performed his job.[2] Second, it is undisputed that all employees of U.Lim are of Korean ancestry and that all similarly situated employees at U.Lim were treated equally. All U.Lim employees who were involved in the production at the U.Lim de Mexico facility, were required to work the same overtime hours. Thus, among similarly situated U.Lim employees, Plaintiff was treated equally.[3] Third, the record reveals that the Mexican employees at U.Lim de Mexico were subject to Mexican labor laws and were paid overtime wages according to Mexican labor law. Thus, the disparate treatment in paying overtime to the Mexican workers but not to U.Lim's management employees is based upon nondiscriminatory reasons because Plaintiff, as a citizen of the United States, was subject to different labor laws (Plaintiff raises

---

[2] Plaintiff alleges that the underlying adverse employment decision consists of his termination, and not that he was not compensated for his overtime hours.

[3] The court rejects Plaintiff's contention that the relevant pool of workers should include the Mexican workers employed by U.Lim de Mexico for purposes of determining disparate treatment between the employees. While Plaintiff sets forth a strong argument for inclusion of U.Lim de Mexico's employees into Title VII's 15 employee requirement, see 42 U.S.C. §2000e(b), the court concludes that the Mexican workers are not similarly situated to Plaintiff because they are subject to a different regulatory scheme, pay scale and culture which makes any comparison extremely difficult and of questionable usefulness. Accordingly, the pool of similarly situated employees is limited to U.Lim's employees.

1  no argument that the overtime hours worked by Plaintiff are compensable under Mexican labor law).

2  Finally, even if Plaintiff could establish a prima facie case, Defendants have come forward with
3  legitimate non-discriminatory reasons for Plaintiff's discharge. Defendant's evidence establishes that
4  he was terminated because Plaintiff refused to work the overtime hours required of U.Lim's
5  employees. Under the burden shifting provisions of Title VII, Plaintiff fails to come forward with
6  evidence indicating that Defendants' reason for his discharge was a pretext for discrimination based
7  upon his national origin. Accordingly, summary judgment is properly granted on the Title VII and
8  FEHA claims.

9  In sum, summary judgment is granted on all claims. The Clerk of Court is instructed to enter
10  final judgement and to close the file.

11  **IT IS SO ORDERED.**
12  DATED: __3/3__, 2000

13
14  _____
    JEFFREY T. MILLER
    United States District Judge

15  cc:   All parties